In the Matter of the Application of ANDREW P. HARTMANN, Respondent [for a Peremptory Mandamus Order], against MORRIS S. TREMAINE, Comptroller of the State of New York, as Head of the New York State Employees' Retirement System, Appellant.

Third Department, March 3, 1937.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the appellant.

*O'Connell & Aronowitz* [*Stanton Ablett* of counsel], for the respondent.

HEFFERNAN, J.    This is a review of a peremptory mandamus order granted by the Albany Special Term of the Supreme Court directing defendant, the State Comptroller, to modify a determination which the Comptroller made in 1924 relating to petitioner's prior service certificate issued by the State Employees' Retirement System, to the extent of including in such certificate certain service which petitioner claimed to have rendered as an employee of the city of New York during the period from 1890 to 1911.

This appeal presents two questions: (1) Whether the State Comptroller, on December 17, 1924, correctly computed petitioner's prior service certificate; and (2) whether, in any event, petitioner is not chargeable with such laches and acquiescence in the computation as then made as required the denial of the instant application.    This proceeding was instituted on July 1, 1936.

The facts are undisputed.    In October, 1889, petitioner was appointed a city surveyor of the city of New York and took an oath well and truly to perform the duties of his office.    The office of city surveyor of the city of New York is an ancient one, dating back to the year 1691.    Authority for the appointment of qualified persons as city surveyor has continued down to the present day and is now found in chapter 2, article 10, of the Code of Ordinances of the City of New York.    Section 240 thereof, prior to May 1, 1915, provided as follows: " Appointment of Surveyors.    Oath of office.    There shall be as many surveyors appointed for the City as the Board of Aldermen shall from time to time think proper. Each city surveyor, before entering upon the duties of his office, shall take an oath well and truly to perform the same."

Section 242 set forth a schedule of fees for specified services when the services of a city surveyor were employed by any of the borough presidents.

During a period extending from 1890 until 1911 petitioner received several hundred assignments or appointments issued by the commissioner of public works relating to surveying work for the city of New York.    During all this time he maintained a private office where he accepted and performed surveying and engineering work of a private character.    He engaged assistants and employees whom he used in city work and also in his private practice.    These men he hired at his own figure and for their services he charged the city of New York a legal rate when engaged

on city work. Petitioner submitted vouchers to the city, in some instances, on a per diem basis and in others on a lineal foot basis. In none of these vouchers was any personal service of petitioner specifically set forth.

During the period from 1893 to 1897 petitioner was also in the employ of the State of New York at Bedford Reformatory, apparently on part time, since he also claimed to be doing work for the city of New York during the same period. From August 1, 1911, until June 1, 1914, he was employed as engineer for the Bronx Valley Sewer Commission. On or about January 1, 1922, petitioner was appointed city engineer of the city of Yonkers and held that position until December 31, 1923. The city of Yonkers having taken appropriate action to include its officers and employees in the State Employees' Retirement System, petitioner on June 27, 1923, when he was nearly fifty-five years of age, made application for membership in the system.

On or about February 6, 1924, petitioner made application for discontinued service retirement under subdivision 3 of section 61 of the Civil Service Law, claiming to have completed at least twenty years' total service and to have been discontinued from service through no fault or delinquency of his own. Defendant thereupon instituted an investigation of petitioner's claimed prior service, as a result of which petitioner was advised on April 24, 1924 that the Comptroller had come to the conclusion that the services rendered by petitioner to the city of New York as city surveyor were in the nature of a contractor and, therefore, not allowable as personal service. Under date of July 31, 1924, petitioner requested a rehearing.

On December 5, 1924, a formal hearing was held before a Deputy Comptroller at which time petitioner was represented by counsel. The details and circumstances of petitioner's services for the city of New York were carefully reviewed and on December 17, 1924, the Comptroller made his written determination and decision wherein he adhered to his earlier decision disallowing, as a prior service credit, petitioner's services rendered to the city of New York from 1890 to 1911.

On or about October 16, 1928, petitioner, having attained the age of sixty, re-entered the employ of the city of Yonkers as an assistant engineer and was so employed until November 15, 1928, a period of one month.

On or about October 18, 1928, petitioner made application for superannuation retirement under sections 62 and 63 of the Civil Service Law. In that application petitioner listed his prior service

as " Department Public Works Water Extension, Ass't. Engineer, same as application until verified." Petitioner was allowed total prior service of five years, ten months and thirteen days, computed upon the allowance of one year's full time service for the State of New York during the period 1893 to 1897; two years, nine months and thirteen days, from August 14, 1911, to May 26, 1914, service with Westchester county; two years' service as city engineer of Yonkers from January 1, 1922, to December 31, 1923; and one month's service with the city of Yonkers from October 16, 1928, to November 15, 1928. Based upon such prior allowance petitioner was awarded a retirement allowance of $46.99 per month, which monthly allowance has been regularly paid to, accepted and received by petitioner from November 18, 1928, to the present time. No proceeding, either by mandamus or certiorari, to review the determination of the defendant made on December 17, 1924, was ever instituted by petitioner until the commencement of the instant proceeding.

On these facts the learned justice who presided at the Special Term held that petitioner was an employee of the city of New York during the period he performed the duties of city surveyor. In so holding we think he erred.

It is true that between the years 1890 and 1911 petitioner as a surveyor did a large amount of work for the city of New York. It seems to us that defendant correctly classified those services as having been rendered as an independent contractor rather than as an officer or employee of the city of New York. This, because the services involved the exercise of judgment and professional skill to bring about a desired result without that degree of control or supervision which attends an employment, because the services could be and were performed either by petitioner or by such employees of his as he chose, because petitioner was free to devote his services either to public work for the city or to private work, because he maintained at all times a private office where he accepted and performed work of a private character, because the position of city surveyor is not classified under civil service and because, although extending over a period of twenty-one years, petitioner's services for the city of New York were of a recurring or periodical nature depending entirely upon whether or not any one of the five borough presidents had need of his services. Manifestly, petitioner's services were availed of by the city of New York, acting through its several borough presidents, to accomplish a desired result and the method and manner of attaining that result rested entirely in petitioner's hands. He had no superior

to direct the details of his efforts and he was free to do the work himself or to hire such assistants and employees as he himself chose. In addition, he was free to accept such private work as he could obtain and cared to do. Appointment as city surveyor, in our view, vested the incumbent with authority to do certain acts and entitled him to certain compensation when he performed work for the city of New York. In no sense of the word did such appointment constitute the incumbent as an officer or employee of the city of New York. Such services as petitioner performed at various times from 1890 to 1911 for the city of New York were pursuant to a specified contract or assignment in each instance and the Comptroller correctly determined that such services were rendered as an independent contractor and not as an officer or employee.

An independent contractor and an agent are not always easy to distinguish, and there is no uniform criterion by which they may be differentiated. Generally, however, the relations are distinguished by the extent of the control which the employer exercises over the employee in the manner in which he performs his work. Where the will of the employer is represented only in the result, and not in the means by which it is accomplished and the employer retains no control over the employee as to the manner or means of accomplishing the desired result, the employee is an independent contractor and he, and not his employer, is responsible for his own acts and contracts, and the relation is not changed by the employer's reservation of the right of supervision and approval. Where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent, and the relationship is one of agency when the employer reserves control and an interest in the performance of the work other than the finished product. (2 C. J. S., Agency, § 2.)

An independent contractor is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in the performance of such contract, but only as to the result. (2 Am. Jur., Agency, § 8.)

An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. (Am Law. Inst., Restatement of the Law of Agency, § 2.)

The question whether a person is an officer or employee of a governmental unit or merely an independent contractor has fre-

quently arisen in cases involving the immunity from Federal taxation of officers or employees of the State or one of its political subdivisions.

In *Metcalf & Eddy* v. *Mitchell* (269 U. S. 514) it was held that a consulting engineer engaged by a State or one of its subdivisions for work not permanent or continuous in character on public water supply and sewage disposal projects, whose duties are prescribed by his contract and who takes no oath of office and is free to accept other concurrent employment, is neither an officer nor employee but is rather an independent contractor.

In *Childers* v. *Commissioner of Internal Revenue* (80 F. [2d] 27) the court noted: " The books are replete with instances where the term ' employer ' or ' employ ' is used in connection with the hiring of an independent contractor."

In *Pease* v. *Commissioner of Internal Revenue* (83 F. [2d] 122) the facts in many respects coincide with those in the instant case. There, petitioner was a civil engineer and held the office of engineer in each of the municipalities for which he performed services. During all of that time he was also president of an engineering company and free to practice his profession. Just as did petitioner in the instant case, he employed assistants and employees to do the actual work. In that case the court said: " Here the petitioner's employment in some instances was for brief periods, in others from year to year, and others for the duration of a particular work undertaken. He was paid on a commission basis according to agreement negotiated with the city council or with the city manager, and employed his assistants and helpers and paid them out of his own earnings. He was engaged in practicing his profession of engineering and was employed by each of the municipalities as he might or could have been employed by any other client. In our opinion he was an independent contractor, and the income which he received from his employment was taxable."

Petitioner emphasizes the fact that he was required to take an oath as surveyor. The mere fact that he did so, standing alone, does not make him a public officer. In *Buckner* v. *Commissioner of Internal Revenue* (77 F. [2d] 297) the court said: " The petitioner was free to accept concurrent employment; his engagement was not for work of a permanent or continuous character, but only for the duration of the particular case or investigation which he was engaged to prosecute. Permanency was lacking, as was any fixed compensation to be received. It is true that he took an oath of office, but this alone is not sufficient to make him a public officer."

The defendant was without power to modify the prior service certificate issued to petitioner on December 17, 1924, after the expiration of one year from date of issuance. (Civil Service Law, § 53, subd. 7.)

It is undisputed that the determination herein sought to be modified was made on December 17, 1924, and that no proceeding, either by certiorari or mandamus, in connection therewith was ever instituted until the instant proceeding was commenced in 1936. It is also undisputed that in October, 1928, petitioner applied for and was awarded a superannuation retirement allowance of $46.99 per month, which he has regularly received and is still receiving.

Clearly an application for a certiorari order to review the Comptroller's determination of December 17, 1924, must have been instituted within four months from the date thereof. (Civ. Prac. Act, § 1288.) While there is no statutory limitation of time within which an order of mandamus must issue, the four months' limitation for a certiorari order has been held, by analogy, to apply. (*Matter of Williams* v. *Pyrke*, 233 App. Div. 345; *Matter of MacMaster* v. *Harvey*, 239 id. 553; affd., 265 N. Y. 555.) In the *Williams* case the court held that a delay of two years and two months was a bar to relief. In the instant proceeding we have a delay of practically twelve years. It is obvious that there was such delay and such acquiescence in defendant's action that petitioner's application should have been denied on the ground of laches if for no other reason. Mandamus requires action without delay — an alert attention to an asserted claim. (*Thoma* v. *City of New York*, 263 N. Y. 402.)

The order appealed from should be reversed on the law and facts and the application for a peremptory order of mandamus denied.

CRAPSER and BLISS, JJ., concur; HILL, P. J., and RHODES, J., concur in the result.

Order reversed on the law and facts, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.