BELA VARGA, Individually and as President of the National Hungarian Government, on Behalf of Himself and All Those Beneficiaries of the National Hungarian Trust Fund, Similarly Situated, Respondent, *v.* CREDIT-SUISSE, Appellant.

First Department, March 18, 1958.

*William Eldred Jackson* of counsel (*Rebecca M. Cutler* with him on the brief; *Milbank, Tweed, Hope & Hadley,* attorneys), for appellant.

*Michael M. Platzman* for respondent.

RABIN, J. This action was brought by Bela Varga, at one time President of the Republic of Hungary, to compel the defendant, a Swiss banking institution, to account for funds which were placed in a safe deposit box maintained at said bank pursuant to a formal contract. According to the allegations of the complaint the funds in question were trust funds of a trust created in 1943 '' for the maintenance of the then Government of Hungary, should it be exiled from the country and to provide funds for the activities of the said National Hungarian Government in Exile ''. It is alleged that in 1949 the bank withdrew these funds from the safe deposit box and wrongfully turned them over to the Hungarian People's Republic, which had displaced the former National Hungarian Government.

This appeal is from an order of Special Term denying defendant's motion to dismiss the complaint on the grounds that plaintiff lacks legal capacity to sue, that the complaint does not state a cause of action, and that the action is barred by the Statute of Limitations.

Plaintiff brings the action on behalf of himself individually; in his representative capacity as President of the Hungarian National Government in Exile, also known as the Hungarian National Council, and on behalf of all other Hungarian Nationalists presently in exile represented by said council and all other persons similarly situated.

At the outset we should say that the plaintiff is not a sovereign power and may not sue as such because the group which plaintiff claims to represent is not recognized by the State Department as a sovereign power and was not so recognized at the time suit was instituted. Likewise, plaintiff Bela Varga may not sue as an individual because, concededly, as such, he has no right to the fund claimed. At best he may

claim in a representative capacity on behalf of the entity known as the Hungarian National Government in Exile or the Hungarian National Council. However, the complaint, insofar as it purports to show legal capacity to sue in a representative capacity, leaves much to be desired. There is nothing alleged identifying or describing the persons who comprise this group which is claimed to be the beneficiary of the fund. Nor can it be ascertained from the complaint whether plaintiff is the person properly authorized to represent this group and maintain an action on its behalf. Possibly these defects could be cured by amendment, but on the complaint in its present form it could very well be held that plaintiff has failed to establish legal capacity to sue. We need not reach that conclusion however, for we believe the complaint should be dismissed for reasons hereinafter indicated.

There are three possible theories upon which plaintiff might state a cause of action: first, that a trust (express or constructive) can be found in favor of the Government in Exile as beneficiary with the defendant bank as trustee; second, breach of contract; and third, conversion.

The complaint may not be upheld on the trust theory in view of an earlier decision of this court (*Varga* v. *Credit-Suisse*, 2 A D 2d 596, 597). In that proceeding attacking the court's jurisdiction of the subject matter of this action, we sustained such jurisdiction based upon a construction of the complaint as one for breach of contract, but we specifically rejected jurisdiction on the theory of a trust, either express or constructive.

If we consider the action as one for breach of contract or one based upon conversion then in either event we are compelled to hold that it is barred by the Statute of Limitations.

The time for instituting an action for breach of contract, under the applicable section of the Civil Practice Act (§ 48, subd. 1), is limited to six years from the occurrence of the breach. If defendant breached its contract, then that breach occurred either on May 20, 1949, the date on which the complaint alleges the bank terminated its contract on the safe deposit box, or on August 22, 1949, the date on which the motion papers show the fund was delivered by the bank to the Hungarian People's Republic. Since this action was not commenced until April 27, 1956, the six-year limitation would bar a claim based upon a breach of contract occurring on either date. If the cause is based in conversion, the conversion took place not later than August 22, 1949 and is accordingly barred by the applicable three-year statute (Civ. Prac. Act, § 49, subd. 7).

It is urged however that the deposit of the funds with defendant bank was one which was not to be repaid at a fixed time but only upon a special demand, and consequently the statute did not commence to run until plaintiff's demand was made shortly before the present suit was instituted (Civ. Prac. Act, § 15, subd. 2). This argument is wholly without merit for there was no deposit of funds with the defendant bank subject to a demand for repayment. All that existed was a contract for the rental or use of a safe deposit box, access to which was limited to the representatives of the so-called Hungarian Government in Exile. Accordingly there can be no question of the need for a demand before liability attached.

The argument is also advanced that the Statute of Limitations could not commence to run until December, 1951 when the plaintiff claims to have obtained, for the first time, knowledge of defendant's wrongful act. This contention would have weight were this an action for fraud, since in such an action the cause does not accrue until discovery of the fraud (Civ. Prac. Act, § 48, subd. 5). But this action is not in fraud. Likewise, knowledge of the wrongful act might mark the statute's starting point if the action were based upon a fiduciary or trust relationship where a demand is necessary (Civ. Prac. Act, § 15, subd. 1). However, the trust relationship, as a cause of action, has been ruled out by our prior decision.

Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in either contract or conversion (*Guild* v. *Hopkins*, 271 App. Div. 234, affd. 297 N. Y. 477). In the decision written by this court in that case it was said (p. 244):

"A cause of action for breach of contract or conversion accrues when the breach or the conversion occurs and the statute then begins to run. Respondent's cause of action accrued as each wrong occurred, whether the wrong involved was a breach of contract or a conversion. (*Model Building & Loan Assn.* v. *Reeves*, 114 Misc. 137, 142, affd. 236 N. Y. 331; *Pollack* v. *Warner Bros. Pictures, Inc.*, 266 App. Div. 118, 120; *Braunwarth* v. *Wellington*, 48 N. Y. S. 2d 159, affd. 269 App. Div. 747, leave to appeal denied 294 N. Y. 639.)

"Nor does the existence of a cause of action depend upon respondent's knowledge that she has suffered an injury. That she may not have discovered the wrongs complained of until long after they were committed is immaterial. (*Brick* v. *Cohn-Hall-Marx Co.*, 276 N. Y. 259; *Wood* v. *Young*, 141 N. Y. 211, 217; *Wakulaw* v. *State Bank*, 214 App. Div. 673, 677.) 'Except in cases of fraud where the statute expressly provides other-

wise the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.' (*Schmidt* v. *Merchants Despatch Trans. Co.,* 270 N. Y. 287, 300.) The only exception to the rule that lack of knowledge does not postpone the accrual of a cause of action is to be found in section 48, subdivision 5, of the Civil Practice Act which provides 'An action to procure a judgment on the ground of fraud * * * is not deemed to have accrued until the discovery by the plaintiff * * * of the facts constituting the fraud.' "

We accordingly hold that whether or not plaintiff had knowledge of the alleged wrongful act on the part of the defendant is immaterial and that the Statute of Limitations started to run when the wrongful act took place. On the undisputed facts in the record before us it is clear therefore, that any cause of action for breach of contract or for conversion arose more than six years prior to the commencement of this lawsuit and consequently is barred by the statute.

The order should be reversed on the law and the complaint dismissed, with $20 costs and disbursements to appellant.

BOTEIN, P. J., VALENTE, McNALLY and STEVENS, JJ., concur.

Order unanimously reversed on the law, with $20 costs and disbursements to the appellant, and the motion to dismiss the complaint granted, with $10 costs, and judgment is directed to be entered in favor of the defendant dismissing the complaint, with costs.