ROYAL INSURANCE COMPANY OF AMERICA and Safeguard Insurance Company, t/a Royal Insurance Company as subrogees of Clement and Rose Vicari, Plaintiffs,

v.

RU–VAL ELECTRIC CORP., The New York Board of Fire Underwriters and The Aetna Casualty and Surety Company, Defendants,

v.

The AETNA CASUALTY AND SURETY COMPANY, Third Party Defendant.

No. CV–92–4911.

United States District Court, E.D. New York.

March 12, 1996.

648

**650**

Michael J. Sommi, John F. Brown, Jr., Paul R. Bartolacci, Cozen and O'Connor, New York City, for plaintiffs.

George R. Daly, Donald T. Rave, Jr., Timothy P. Lennon, Bigham Englar Jones & Houston, New York City, for defendant New York Board of Fire Underwriters.

William R. White, White, Quinlan, Staley & Ledwith, Garden City, NY, for defendant Ru–Val Electric Corp.

Michael Majewski, Mineola, NY, for third party defendant.

### AMENDED MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge:

I. Introduction .................................................... 650

II. Facts ......................................................... 651
 A. The Parties ................................................ 651
 B. Town Ordinance ............................................ 651

III. Procedural History ............................................ 652

IV. New York Law Applicable ...................................... 652

V. Law Relating to Determination of Status as Servant or Independent Contractor .................................................... 652
 A. Generally ................................................. 652
 B. Policy Considerations Where Principal is Governmental Body .............. 653
 C. Application to Facts ........................................ 654

VI. Law Relating to Statute of Limitations ........................... 655
 A. Claims Against Municipalities ................................ 655
 B. Contract and Tort Claims ................................... 656
 C. Application to Facts ........................................ 658

VII. Law Relating to Governmental Immunity ......................... 658
 A. Sovereign Immunity ........................................ 658
 B. Modern Local Government Immunity .......................... 659
 C. Immunity and Independent Contractors ....................... 659
 D. Application to Facts ........................................ 660

VIII. Conclusion ................................................... 660

---

### I. Introduction

A fire caused significant property damage to a house, allegedly because of defective wiring. The involved insurance companies disagree about which of them is liable. One defendant, the New York Board of Fire Un-

derwriters, seeks protection of local government immunity from tort liability and asserts various statute of limitations defenses against any liability for its alleged negligent inspection of the wiring. This memorandum addresses only the Board's motion for summary judgment.

Its inspectors, the Board claims, are authorized by town ordinance as the town's representatives to perform electrical inspections, and thus are entitled to the immunity from tort liability that protects town employees. The Board also maintains that plaintiffs' claim is barred by applicable statutes of limitation. It argues that it and its inspectors, as authorized representatives of the municipality, are entitled to protection under General Municipal Law section 50–i (requiring that a suit against a town be brought within a year plus ninety days) and section 50–e (requiring that a municipality be notified of a claim within 90 days). Alternatively, it urges that under the general three-year negligence and six-year contract statutes of limitations the claim is barred because claims accrue at the latest at the time a certificate of passing inspection is issued by the Board.

For the reasons indicated below, the Board's motion for summary judgment is granted because, while the Board is not entitled to the protection due a municipality or its employees, the suit against it is barred under general statutes of limitations.

## II. Facts

### A. The Parties

Clement and Rose Vicari hired defendant Ru–Val Electric Corporation as an electrical contractor for the construction of their residence in Oyster Bay, Long Island. Ru–Val completed the work in January 1987. Defendant New York Board of Fire Underwriters inspected the electrical work on November 25, 1986 and issued a certificate of compliance with electrical codes on December 5, 1986.

On August 24, 1992 a fire at the Vicari residence resulted in property damage. An investigation showed that the electrical work performed by Ru–Val violated numerous fire and safety codes and standards and that the violations contributed to the fire.

Plaintiffs are insurers suing as subrogees of the Vicaris on their claim for property damage. They filed the original complaint in this action against Ru–Val on October 16, 1992. Ru–Val has been dissolved but its insurer, Aetna Casualty and Surety Company, is a defendant.

Plaintiffs later named the Board as a defendant in an amended complaint, filed on November 4, 1993. They maintain that Ru–Val's code violations should have been detected by the Board inspector.

The Board is a not-for-profit corporation formed in 1867 by insurance companies operating within New York pursuant to a special act of the State Legislature. Its purpose is to decrease fire losses. It has authority to perform electrical inspections and to investigate fraudulent claims. It also runs a "fire patrol" and engages in fire prevention and public relations work.

Until 1977 the Board was the only private organization available to perform electrical inspections for municipalities within the State. Many municipalities, including the town of Oyster Bay, authorize the Board to perform electrical inspections and issue certificates of compliance with electrical codes.

To accomplish its purposes, the Board maintains a central office in New York City and regional offices around the state. The parties have stipulated that the Board is responsible for hiring, training, supervising, assigning, scheduling, paying and firing its inspectors. The Board receives its fee directly from the owner or the contractor and pays no part of it to the town.

### B. Town Ordinance

An Oyster Bay town ordinance establishes the role of the Board in connection with town electrical standards. Section 1.1.5 of the Electrical Code of the Town of Oyster Bay requires that all electrical wiring in the town conform to the National Electrical Code ("NEC") except where the Town Code provides otherwise. The NEC is a set of safety standards for electrical work developed and

adopted by the National Fire Prevention Association ("NFPA"). *See* Part V.B *infra.*

Section 1.1.8 provides that Board inspectors are "representatives" of the Town to inspect electrical installations:

> The Chief Inspector, and each of the duly appointed inspectors of the New York Board of Fire Underwriters are hereby authorized as representatives of the Town of Oyster Bay to make inspections and reinspections of all electrical installations ... and to approve or disapprove the same. In no event, however, will the cost or expense of such inspections and reinspections be a charge against the Town of Oyster Bay.

The inspector reports to the town's building inspector. Section 1.1.9 provides:

> It shall be the duty of the Inspector to report in writing to the Chief Bldg. [sic] Inspector, whose duty it shall be to enforce all the provisions of this Ordinance.... The Inspector shall make inspections and reinspections of electrical installations ... upon the written request of an authorized official of the Town.... The Inspector is authorized to make inspections and reinspections of electrical wiring installations, devices, appliances, and equipment ... where he deems it necessary for the protection of life and property....

### III. Procedural History

Plaintiffs, Royal Insurance Company of America and Safeguard Insurance Company of America, have brought this diversity action as subrogees of the Vicaris. They seek to hold Ru–Val—or as a practical matter its insurer since Ru–Val is without funds—liable for the property damage caused by the fire. They also seek recovery against the Board for negligence because its inspector issued a certificate of compliance despite code violations.

The Board moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Board maintains that it is entitled to the same immunity against tort liability granted to local governments and their officials because it and its inspectors are the authorized town representatives for electrical inspections. The Board also maintains that plaintiffs' claims against it are barred by the statute of limitations.

Based on the pleadings, legal memoranda, and oral argument, it became clear that the motion raised important issues requiring further factual development. The court converted the motion to one for summary judgment and provided an opportunity for discovery and further briefing.

### IV. New York Law Applicable

■ Federal courts sitting in diversity apply the substantive law of the forum state on outcome-determinative issues. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 80, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938); 28 U.S.C. § 1652 (1988). Applicable is the forum state's statute of limitations. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 109–11, 65 S.Ct. 1464, 1470–71, 89 L.Ed. 2079 (1945).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here, New York law requires dismissal of the action against the Board.

### V. Law Relating to Determination of Status as Servant or Independent Contractor

#### A. Generally

■ The law of agency distinguishes between employees (or "servants") and independent contractors. *See* Restatement (Second) of Agency § 220 (1958). Both employees and independent contractors are agents, but whether a party is one form of agent or the other will often determine liability. *See id.* at § 220 cmt. f. In the present case, both the limitations and immunity issues require a determination on this point.

■ The general New York tort rule is that employers are liable for the negligence of employees, but not—with certain exceptions inapplicable here—for that of independent contractors. *See Kleeman v. Rhein-*

*gold,* 81 N.Y.2d 270, 273–74, 598 N.Y.S.2d 149, 152, 614 N.E.2d 712, 715 (1993); Restatement (Second) of Torts § 409 (1965). The Board argues that agents who are not employees need not be relegated to the status of independent contractor, but the law does not appear to recognize an intermediate category. *See* Restatement (Second) of Torts § 409 cmt. a (describing "independent contractor" as "any person who does work for another under conditions which are not sufficient to make him a servant" (quoting Restatement (Second) of Agency § 2 cmt. b)).

 Whether a private entity is a servant or an independent contractor depends upon particular facts and circumstances. *See* Restatement (Second) of Agency § 1 cmt. b ("Agency is a legal concept which depends upon the existence of required factual elements."). Indicia of status as an employee or independent contractor include, *inter alia,* the degree of control the employer exercises over the manner in which the work is done, the method of payment of compensation, the independent nature of the contractor's business, and the extent to which the private entity is responsible for hiring and for supervising assistants and for supplying materials and tools. *See* Restatement (Second) of Agency § 220(2) (listing factors). While the question is usually one of fact for the jury, if there is no factual dispute, it may be answered by the court as a matter of law. *See Berger v. Dykstra,* 203 A.D.2d 754, 610 N.Y.S.2d 401, 402 (3d Dep't 1994).

 Control over the manner of performance is the most important factor in determining the nature of the agency relationship. *See Kleeman,* 81 N.Y.2d at 274, 598 N.Y.S.2d at 152 (risk of loss most sensibly borne by party controlling manner of performance); *Berger,* 203 A.D.2d 754, 610 N.Y.S.2d at 402 (control is the "critical factor"); *Hartmann v. Tremaine,* 250 A.D. 188, 293 N.Y.S. 919, 924 (3d Dep't 1937) ("[T]he relations are distinguished by the extent of control which the employer exercises over the employee in the manner in which he performs his work."). This aspect is especially telling in tort because the party controlling performance is in the best position to avert risk. *Berger,* 610

N.Y.S.2d at 402; Restatement (Second) of Torts, § 409 cmt b (1965). Courts look for the exertion of actual control, not formal indicia of control. *See* Restatement (Second) of Torts, § 409 cmt a (immaterial whether work done gratuitously or for pay); *see also Hartmann,* 293 N.Y.S. at 925 (taking oath of office did not render city surveyor who maintained private office a government employee).

B. Policy Considerations Where Principal is Governmental Body

Government at all levels has long utilized privatization, a practice that has accelerated in recent years. *See* Jonas Prager, *Contracting Out: Theory and Practice,* 25 N.Y.U. J. Int'l L. & Pol. 73 (1993) (search for deficit reduction and greater efficiency); Daniel A. Farber, *Revitalizing Regulation,* 91 Mich. L.Rev. 1278, 1278 (1993) (book review) ("hostility to the modern administrative state"); Lisa Vecoli, *The Politics of Privatization,* 15 Hamline J. Pub. L. & Pol'y 243, 243 (1994) (advocates "attracted to privatization as a way to shrink government."). Privatization encompasses two distinct processes. One is divestiture, through which government converts or sells off operations to make them private enterprises. The other is contracting out, in which government hires private individuals or enterprises to perform services previously handled by government employees. While governments have traditionally contracted out unique projects such as building bridges or tunnels, their appears to be a trend to use contractors for ongoing functions such as fire protection, operation of prisons, and solid waste removal and disposal. *See* Prager, *supra,* at 104.

The influence of the work of private organizations on the adoption and enforcement of government health and safety standards is extensive. Several hundred private organizations are currently involved in the development and enforcement of national safety and health standards. *See* Robert W. Hamilton, *Prospects for the Nongovernmental Development of Regulatory Standards,* 32 Am. U.L.Rev. 455, 461 (1983); *cf.* Steven L. Schwarcz, *A Fundamental Inquiry Into the Statutory Rulemaking Process of Private*

*Legislatures,* 29 Ga.L.Rev. 909 (1995). As an example, the National Fire Prevention Association ("NFPA") is a private, voluntary organization with more than 31,000 members representing industry, labor, insurers, academia, medicine, firefighters and government. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 495, 108 S.Ct. 1931, 1934, 100 L.Ed.2d 497 (1988). The NFPA promulgates the National Electrical Code ("NEC"), a set of product and performance requirements for the design and installation of electrical wiring systems, revised every three years. *Id.* As the Supreme Court has noted, the NEC is "the most influential electrical code in the nation. A substantial number of state and local governments routinely adopt the Code into law with little or no change...." *Id.* Many municipalities in New York State, including the Town of Oyster Bay, incorporate the NEC into local building safety codes. *See, e.g., Atlantic–Inland, Inc. v. Town of Union,* 126 Misc.2d 509, 483 N.Y.S.2d 612, 614 (Sup.Ct. Broome County 1984) (incorporation of NEC into Town of Union's electrical code); Oyster Bay Electrical Code § 1.1.5 (incorporation of NEC).

 The extensive adoption of privately-developed standards indicates a reliance on private expertise but cannot be considered actual privatization of the lawmaking function. As a New York court found in *City of Syracuse v. Penny,* 59 Misc.2d 818, 300 N.Y.S.2d 679 (Sup.Ct. Onondaga County, 1969), by incorporating the NEC—and by implication NEC staff decisions—into a municipal ordinance, the City did not unconstitutionally delegate its police power. *Penny,* 300 N.Y.S.2d at 683. Municipalities affirmatively adopt the NEC and retain the authority to modify or repeal ordinances. They do not delegate to the NFPA the power to set municipal law.

A different problem arises when government delegates decisionmaking authority—such as performing inspections and awarding compliance certificates—to a private entity. In *Atlantic–Inland* the court found that the town exceeded its authority to delegate its police power when it not only designated the Board of Fire Underwriters as its representative for electrical inspections, but permitted the Board to set, collect and retain the town's inspection fees. 483 N.Y.S.2d at 617–18; *see also* N.Y.S. Town L. § 27(1) (fees must be paid to town and not retained by deputies).

*Atlantic–Inland* is distinguished from the present case on two grounds. First, in *Atlantic–Inland* plaintiff was a competitor of the Board of Fire Underwriters who challenged the exclusive designation of the Board of Fire Underwriters as electrical inspectors. Plaintiff contested the town's action, not the Board's. Second, the Oyster Bay town ordinance expressly provides that payments to the Board of Fire Underwriters shall not be considered a charge of and to the town. The Oyster Bay ordinance therefore does not appear to run afoul of the state statute prohibiting retention of town fees by deputies. N.Y.S. Town L. § 27(1).

 Given the burgeoning privatization of government functions, routinely treating private entities as if they were part of the government may present special dangers. Among them are the unwarranted extension of immunities. *See* Part VII, *infra.* Absent a clear legislative decision to the contrary, the courts must hesitate to legally integrate private and government activities.

## C. Application to Facts

The principal factor in determining whether the Board of Fire Underwriters is an independent contractor or an employee of the Town of Oyster Bay is the degree of control the town or town officials exercised over the manner in which the Board inspectors performed their work. As noted in Part V.A, *supra,* the Board cannot be an agent without being treated under the law as either an employee or a contractor.

The town ordinance "authorize[s]" the Board of Fire Underwriters and its inspectors to be its "representatives" for purposes of electrical inspections. Oyster Bay Town Electrical Code § 1.1.8. The Board argues that the use of the term "representative" establishes definitively that the Board is entitled to governmental immunity protection.

 The town's designation of inspectors of the Board as its authorized representative does not, by itself, make those inspectors

town employees for purposes of tort law. *Cf. Hartmann v. Tremaine*, 250 A.D. 188, 293 N.Y.S. 919, 925 (1937) (plaintiff's appointment as city surveyor and taking oath of office did not make plaintiff city employee where city exercised no control over manner of performance).

■ The undisputed facts overwhelmingly establish that the Board of Fire Underwriters, and not the town, controls the manner in which inspections are performed. It is the Board that hires, trains, supervises, assigns, schedules, pays, disciplines and fires its inspectors. The town takes no part in those activities. The Board receives its fee directly from the owner or the contractor. The town neither collects any fees nor pays any funds to the Board as part of the inspection requirement. Every factor courts have used to determine whether a municipality exercises control sufficient to be characterized as establishing an employment relationship is lacking in this case.

The Board argues that its inspectors are not independent contractors of the town because the Board has no contract with the town and therefore they are entitled to the same protection as town employees. While the absence of a contract makes unreasonable a finding that the Board is an independent contractor, it makes it even less appropriate to consider Board inspectors town employees. Rather than merely contracting out electrical inspections, the town has delegated the responsibility for making inspections. Viewed in this light, the Board of Fire Underwriters is neither an employee nor an independent contractor of the town, but a contractor (or subcontractor) of Ru-Val or the Vicaris.

## VI. Law Relating to Statute of Limitations

### A. Claims Against Municipalities

New York's statute of limitations for negligence actions against towns, cities, counties, or villages requires that any action be brought within one year and 90 days after the event occurs upon which the claim is based. N.Y.S.Gen.Mun.L. § 50–i (1986). Additionally, a plaintiff must file a notice of claim for negligence with the intended government defendant within 90 days after the claim arises. N.Y.S.Gen.Mun.L. § 50–e(1)(a) (1986).

Several lower courts have held that section 50–i limits claims against individual officers, agents, or employees of a municipality provided that the individual has a right to indemnity from the municipality. *See, e.g., Pileckas v. Trzaskos*, 126 A.D.2d 926, 511 N.Y.S.2d 438, 438–39 (3d Dep't), *appeal denied*, 70 N.Y.2d 601, 518 N.Y.S.2d 1023, 512 N.E.2d 549 (1987) (holding section 50–i limitations applied to claim against police chief because state law requires municipalities to hold police harmless); *Hahin v. City of Buffalo*, 41 Misc.2d 1018, 246 N.Y.S.2d 917, 918–19 (Sup.Ct. Erie County 1964) (holding § 50–i applies to actions against city employees because city must indemnify its employee); *Sorge v. City of New York*, 56 Misc.2d 414, 288 N.Y.S.2d 787, 793 (Sup.Ct.N.Y.County 1968) (holding sections 50–e and 50–i apply "where employees are sued alone in their capacity as agents, servants, or employees of the City . . . *if they are entitled to indemnity* ") (emphasis added).

Defendant argues that because the New York Court of Appeals does not appear to have ruled on the matter, municipal employees are protected by the shorter limitations period under section 50–i whether or not they are entitled to indemnity. The issue the lower courts addressed, however, was not whether employees' inclusion under section 50–i was confined to those entitled to indemnification, but whether section 50–i should be held to include individual municipal employees at all. Thus the Court of Appeals's silence to date means only that it has not yet ruled on whether *any* municipal employee is protected by the limitation in section 50–i.

■ The reasoning of the lower New York courts is foreign to the Board's position. As the *Hahin* court noted, "since the city must indemnify its employee, the city is the real party in interest." *Hahin*, 246 N.Y.S.2d at 918–19; *see also Sorge*, 288 N.Y.S.2d at 792 ("[If] there is public corporation responsibility to indemnify, the public corporation becomes the real party in interest"). Application of the municipal limitation period to individuals thus protects the munic-

ipality, not the individual, by limiting the municipality's liability. *See, e.g., Bacalokonstantis v. Nichols*, 141 A.D.2d 482, 529 N.Y.S.2d 111, 113 (2d Dep't 1988) (claim against a county hospital employee was governed by section 50–i largely based on county attorney's decision to represent him).

### B. Contract and Tort Claims

New York's statute of limitations for contract claims is six years. N.Y.C.P.L.R. § 213(2). An action for negligence causing injury to property or personal injury must generally be brought within three years. N.Y.C.P.L.R. § 214(4), 214(5). Actions for which no specific period is prescribed by law must be brought within six years. N.Y.C.P.L.R. § 213(1).

▮ A contract claim generally accrues at the time of the breach, not when the injury is sustained. *City Sch. Dist. of Newburgh v. Stubbins & Associates*, 85 N.Y.2d 535, 538, 626 N.Y.S.2d 741, 742–43, 650 N.E.2d 399, 400–401 (1995); *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 610, 415 N.Y.S.2d 817, 819, 389 N.E.2d 130 (1979). Plaintiff's knowledge of the breach is not necessary for the statute to start running. *Varga v. Credit Suisse*, 5 A.D.2d 289, 171 N.Y.S.2d 674, 677–78 (1st Dep't 1958) (citing, *inter alia, Wood v. Young*, 141 N.Y. 211, 36 N.E. 193 (1894)).

▮ A tort claim, by contrast, generally arises when the injury is sustained. *See Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 403, 373 N.Y.S.2d 39, 44, 335 N.E.2d 275, 280 (1975) (noting that in most, but not all, tort claims, statute runs from time of injury); 1 Harold L. Korn, Arthur R. Miller, et al., New York Civil Practice ¶ 214.16 (1995). The time the injury occurs is distinct from both the time of tortious conduct and the time the injury is discovered. *See* 1 Korn, Miller, et al. at ¶ 214.16 ("[C]ourts begin to measure from the time of impact, or the time the act complained of produces resultant consequences....") (citations omitted); *cf. Braune v. Abbott Laboratories*, 895 F.Supp. 530 (E.D.N.Y.1995) (discovery rule); N.Y.C.P.L.R. § 214–c (1990) (discovery rule).

▮ In building construction cases where the claim is simultaneously for breach of contract and for injury to property, New York cases hold that an owner plaintiff's cause of action accrues against contractors or architects from either the time the work is completed or a certificate is issued. *City Sch. Dist. of Newburgh v. Stubbins & Associates, Inc.*, 85 N.Y.2d 535, 537, 626 N.Y.S.2d 741, 742, 650 N.E.2d 399, 400 (1995) (owner against builder); *Sears, Roebuck & Co. v. Enco Associates, Inc.*, 43 N.Y.2d 389, 393–95, 401 N.Y.S.2d 767, 769, 372 N.E.2d 555, 557 (1977) (owner against architect); *Harbour Pointe Village Homeowners Ass'n, Inc. v. Marrano/Marc Equity Joint Venture*, 185 A.D.2d 648, 586 N.Y.S.2d 55, 56 (4th Dep't 1992) (owner against developer accrued at latest upon filing of certificate of occupancy for last unit); *Sosnow v. Paul*, 43 A.D.2d 978, 352 N.Y.S.2d 502 (1974), *aff'd*, 36 N.Y.2d 780, 369 N.Y.S.2d 693, 330 N.E.2d 643 (1975) (owner against architect); *see also* Jane M. Draper, Annotation, When Statute of Limitations Begins to Run on Negligent Design Claim Against Architect, 90 A.L.R.3d 507 (1979).

▮ The three-year tort statute of limitations applies in construction cases unless the action is for property damage and a contractual relationship exists between the parties. *Sears, Roebuck & Co.*, 43 N.Y.2d at 394–95, 401 N.Y.S.2d at 770, 372 N.E.2d at 558 (citing *Matter of Paver & Wildfoerster (Catholic High Sch. Ass'n)*, 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (1976)); 1 Korn, Miller, et al., New York Civil Practice ¶ 214.14. If the action is brought after the three-year period for negligent injury to property, but within the six-year contract limitations period, the claim is not time-barred but damages are limited to those available in contract. *Sears, Roebuck & Co.*, 43 N.Y.2d at 396–97, 401 N.Y.S.2d at 771, 372 N.E.2d at 559.

▮ The time of completion rule pertaining to contractors and architects applies against owner-plaintiffs. *See City Sch. Dist.*, 85 N.Y.2d at 537, 626 N.Y.S.2d at 742, 650 N.E.2d at 400 (*owner's* cause of action accrues against builder at time of comple-

tion of performance); *Sears, Roebuck & Co.,* 43 N.Y.2d at 394, 401 N.Y.S.2d at 770, 372 N.E.2d at 558 (*owner's* claims against architects accrue at time of completion of construction (citing *Sosnow v. Paul,* 36 N.Y.2d 780, 369 N.Y.S.2d 693, 330 N.E.2d 643 (1975))). The owner need not have been in a direct contractual relationship with the defendant for the completion rule to apply. *See City Sch. Dist.,* 85 N.Y.2d at 538–39, 626 N.Y.S.2d at 743, 650 N.E.2d at 401 (completion rule barred owner's claim against builder despite lack of privity where Urban Development Corporation contracted with defendant to build library for plaintiff); *Harbour Pointe Homeowners Ass'n.,* 185 A.D.2d 648, 586 N.Y.S.2d 55, 56 (4th Dep't 1992) (action by title owners of condominium against developer time-barred under completion rule).

The time of completion rule in building construction cases is derived from a judicial gloss concerning professional malpractice. The general rule in malpractice claims is that accrual begins on the date the alleged act occurs. *See Schwartz v. Heyden Newport Chemical Corp.,* 12 N.Y.2d 212, 217, 237 N.Y.S.2d 714, 717–18, 188 N.E.2d 142 (1963) (noting different doctrinal origins of accrual rules for ordinary negligence and for malpractice); 1 Korn, Miller, et al. at ¶ 214.17 (citing *Sosnow v. Paul*). Courts now treat negligence claims against architects as essentially the same as malpractice claims because malpractice "means the negligence of a member of a profession in his relations with his client or his patient." *Cubito v. Kreisberg,* 69 A.D.2d 738, 419 N.Y.S.2d 578, 580–81 (App.Div.2d Dep't 1979), *aff'd,* 51 N.Y.2d 900, 434 N.Y.S.2d 991, 415 N.E.2d 979 (1980); *see also Sears, Roebuck & Co.,* 43 N.Y.2d at 396–97, 401 N.Y.S.2d at 770–71, 372 N.E.2d at 558–59 (action may be described as tort for professional malpractice or contract for nonperformance; applicable statute of limitations determined by remedy sought); *County of Broome v. Vincent J. Smith, Inc.,* 78 Misc.2d 889, 358 N.Y.S.2d 998 at 1003 (characterizing architect's negligence as professional malpractice "[a]s with the doctor, lawyer, or accountant").

While the limitations provisions concerning negligence distinguish certain forms of malpractice in terms of the length of the limitation period, *see* N.Y.C.P.L.R. § 214–a (two and a half-year limitation period for medical, dental, and podiatric malpractice), no statutory distinction is made regarding the time of claim accrual. Exceptions to the general negligence rule that the claim accrues at the time of injury have thus been carved out when "the cases in point involved a professional relationship between the parties." *Cubito,* 419 N.Y.S.2d at 581. The cases have protected professionals because "occasional hardship is outweighed by the advantage in outlawing stale claims." *Id.* (quoting *Schmidt v. Merchants Despatch Transp. Co.,* 270 N.Y. 287, 302, 200 N.E. 824 (1936)).

These rules of law have been strongly reaffirmed by the New York Court of Appeals. As the Court recently noted:

> In cases against architects or contractors, the accrual date for Statute of Limitations purposes is completion of performance.... [N]o matter how a claim is characterized in the complaint—negligence, malpractice, breach of contract—an owner's claim arising out of defective construction accrues on the date of completion, since all liability has its genesis in the contractual relationship of the parties.

*City Sch. Dist.,* 85 N.Y.2d at 538, 626 N.Y.S.2d at 742–43, 650 N.E.2d at 400–401 (citations omitted). There is no need to apply this rule to third persons such as bystanders. *See Cubito,* 419 N.Y.S.2d at 581–82.

There are compelling reasons to adopt the time of certification after inspection as the accrual date in cases where the homeowner or its subrogee sues the Board over an allegedly negligent inspection. The inspection, although required by town ordinance, is essentially part of the work contract with the building contractor hired by the owner. The owner and contractor can be deemed one person for this purpose. *City Sch. Dist.,* 85 N.Y.2d at 538–39, 626 N.Y.S.2d at 743, 650 N.E.2d at 401. In order for the electrical work performed pursuant to the contract to be completed, it must be inspected by the quasi-professional Board inspector.

An inspector therefore stands in a position with respect to an owner plaintiff similar to that of a contractor or an architect.

The owner and his building contractor can observe the inspection and can take steps to conform to proper electrical protocol even if the inspector carelessly approves an improper inspection. *See* Restatement (Second) of Torts § 288C (1965) ("Compliance with [statute or regulation] does not prevent a finding of negligence where a reasonable man would take further precautions."). Given the possibility of payoffs and the like, it is sound to place some burden on the owner and his or her building contractor to detect negligent inspections before a wall is sealed. The general tort time of occurrence rule would permit the owner to proceed against the Board almost indefinitely into the future—long after a six-year contract statute would have run—were there ultimately to be a fire.

### C. Application to Facts

Defendant Board of Fire Underwriters is not entitled to dismissal under sections 50–e and 50–i of the General Municipal law because it and its inspectors are not employees of the town entitled to indemnity. *See* Part VI.A, *supra.* No credible suggestion has been made that the town is obligated to indemnify the Board for its failures if neither the Board nor its inspectors are employees of the town. Town counsel has not undertaken to represent the Board in this matter.

The Board argues that, for indemnification purposes, the town ordinance establishes that the Board and its inspectors are town employees. The town ordinance indemnifying its employees defines as an employee "[a]ny person holding a position by election, appointment, or employment in the service of the town, whether or not compensated ... [but not] an independent contractor." Oyster Bay Code § 22–1. The Board claims that the town electrical code designating the Board and its inspectors as its "representatives" establishes that they are "employees" under the definition in the town indemnification statute. For the reasons discussed in Part V.C, *supra,* the Board can at best be considered an independent contractor of the town. The town ordinance, moreover, condi-

tions indemnification on the defendant's delivery of proper notice to the town attorney within ten days of receiving process in any proceeding. Oyster Bay Code § 22–8. The Board has not offered any proof of compliance with this requirement and thus it is no longer, if it ever was, entitled to indemnity from the town.

Whether the six-year limitations period for contract claims is available in this case need not be decided because plaintiff brought its claim against the Board more than six years after any alleged breach. The Board performed the inspection and issued the inspection certificate before the end of 1986 and construction was completed by January 1987, while the plaintiffs did not name the Board as defendants until November 1993.

Plaintiffs may only proceed under a negligence theory, and then only if the claim accrues at the time of the injury—i.e., the time of the fire. As noted in Part VI.B, *supra,* negligence claims by owners against builders, architects, and Board inspectors follow a time of completion accrual rule. Since the completion rule applies to plaintiffs' negligence claim, the claim is time-barred.

### VII. Law Relating to Governmental Immunity

### A. Sovereign Immunity

Municipalities once enjoyed protection from tort liability under state sovereign immunity. That immunity, based on the maxim "the King can do no wrong," protected the state and its political subdivisions against suit without their consent. *See* 18 Eugene McQuillin, The Law of Municipal Corporations § 53.02.10, at 131 (1993) (citing *Russell v. Men of Devon,* 2 Term Rep. 671, 100 Eng.Rep. 359 (1788)).

New York State expressly waived its immunity in 1929 as part of the Court of Claims Act. N.Y.S.Ct.Cl. Act § 8; *see also Motyka v. City of Amsterdam,* 15 N.Y.2d 134, 138, 256 N.Y.S.2d 595, 597, 204 N.E.2d 635, 637 (1965). This waiver surrendered local government immunity as well. *See, e.g., Florence v. Goldberg,* 44 N.Y.2d 189, 195, 404 N.Y.S.2d 583, 586, 375 N.E.2d 763, 766 (1978)

(local governments "'answerable equally with individuals and private corporations for wrongs of officers and employees'" (citations omitted)).

## B. Modern Local Government Immunity

 Despite the statutory waiver of sovereign immunity, New York courts have resurrected government immunity for tort liability in limited circumstances. In particular, local governments are immune for acts considered discretionary, but not for those considered ministerial. *See Haddock v. City of New York*, 75 N.Y.2d 478, 484, 554 N.Y.S.2d 439, 443, 553 N.E.2d 987, 991 (1990). Local government immunity also extends to actions considered public duties absent an action establishing a special relationship to the individual harmed. *See Solomon v. City of New York*, 66 N.Y.2d 1026, 1028, 499 N.Y.S.2d 392, 393, 489 N.E.2d 1294, 1295 (1985); *Florence v. Goldberg*, 44 N.Y.2d at 194, 404 N.Y.S.2d at 586–88, 375 N.E.2d at 766–68.

 Safety code enforcement, including issuing inspection certificates, is generally a discretionary act. *See, e.g., Miller v. State of New York*, 125 A.D.2d 853, 510 N.Y.S.2d 214, 216 (3d Dep't 1986) (enforcement of state fire safety requirements); *Rottkamp v. Young*, 21 A.D.2d 373, 249 N.Y.S.2d 330, 334 (2d Dep't 1964), *rev'd on other grounds*, 15 N.Y.2d 831, 257 N.Y.S.2d 944, 205 N.E.2d 866 (1965) (building inspections). An inspection also involves a public duty and does not generally establish a special relationship. *See O'Connor v. City of New York*, 58 N.Y.2d 184, 192, 460 N.Y.S.2d 485, 488, 447 N.E.2d 33, 36 (1983) (building inspection); *Sanchez v. Village of Liberty*, 42 N.Y.2d 876, 877–78, 397 N.Y.S.2d 782, 783, 366 N.E.2d 870 (1977) (same). An inspection can give rise to a special relationship, however, when the ignored violation is blatant or when the injured party relies on specific representations of safety. *See Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983) (special relationship to building owner if town certified building as safe despite knowledge of blatant and dangerous violations); *Smullen v. City of New York*, 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971) (blatant violations and personal assurances of safety established special relationship between city sewer construction inspector and injured worker); *see also* 18 McQuillin, *supra* § 53.04.25, at 166 (special relationship can arise from reliance, dependence, or creation of a known risk).

Several justifications have been developed to support the limited scope of current governmental tort immunity. Fear of liability would hamper official decisionmaking and the effective discharge of public officers' duties. *See Haddock*, 75 N.Y.2d at 484, 554 N.Y.S.2d at 443, 553 N.E.2d at 991 (immunity reflects value judgment that compensation to individuals is outweighed by public interest in having government officers free to exercise discretion unhampered by fear of second-guessing); 18 Eugene McQuillin, The Law of Municipal Corporations § 53.04.10, at 156–57 (1993). The lack of immunity would force courts to pass judgement on the policies and decisionmaking of other branches of government. *See* 18 McQuillin, *supra* § 53.04.10, at 157. Without immunity for public duties, government might, it is argued, be reluctant to provide inspections because the risk of liability would be too great. Such liability would be borne by the public as a whole. *See* 18 McQuillin, *supra* § 53.04.25, at 165. None of these justifications apply to a private party such as the Board for which the municipality is not responsible.

## C. Immunity and Independent Contractors

 Despite the limited governmental immunity from tort liability, the nearly unanimous rule in torts is that independent government contractors do not share in that immunity. Contractors are not liable for incidental or necessary damage, but are liable for negligence or wilful torts. Annotation, Right of Contractor With Federal, State, or Local Public Body to Latter's Immunity From Tort Liability, 9 A.L.R.3d 382, 385 (1979). The general rule was established in New York at the turn of the century. In *Bates v. Holbrook*, 171 N.Y. 460, 64 N.E. 181 (1902), the court of appeals held that a contractor would be liable where the danger was unnecessary but was created for the contractor's own convenience. As the court noted:

[A]cts which are authorized by the express enactments of the legislature and performed in good faith upon work of a public character do not render the persons performing them liable for consequential damages unless there is an absence of due care or skill in the execution of the work.

*Id.* at 468, 64 N.E. 181. In *Turner v. Degnon M'Lean Contracting Co.*, 99 A.D. 135, 90 N.Y.S. 948 (1st Dep't), *aff'd*, 184 N.Y. 525, 76 N.E. 1111 (1906), the court found that a contractor, in carelessly performing public work, "was not the agent of the city, nor did it stand in the same position" and was thus not entitled to immunity for its careless act. 90 N.Y.S. at 950.

*Bates* and *Turner* were decided before the New York legislature waived sovereign immunity and the courts resurrected it for certain municipal torts. It is doubtful that the Court would take a more expansive view of independent contractor immunity now that the scope of government immunity is narrower than it was at the turn of the century.

In other jurisdictions where sovereign immunity has been waived, independent contractors receive far less protection than do government employees for their own negligence in performing government contracts. Many states hold that governmental immunity does not extend to the negligence of independent contractors. *See* Annotation, *supra*, 9 A.L.R.3d at 397–98; *see also, e.g., Elizabeth River Tunnel District v. Beecher*, 202 Va. 452, 458–59, 117 S.E.2d 685, 690 (1961) (bus company found to be an independent contractor of a government tunnel district did not share in the district's sovereign immunity); *Meier v. Frank Mashuda Co.*, 168 N.E.2d 319, 322 (Ct.App.Ohio 1959) ("The general rule of law is that the immunity of a contractor performing a contract with a public body does not extend to one who is guilty of negligence in the performance of such contract."); *cf.* 28 U.S.C. § 2679(b)(1), (d)(1) (1994) (Federal Tort Claims Act provisions limiting claims against government employees); 28 U.S.C. § 2671 (same denying government contractors similar protection); *United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976) (control of detailed work critical).

### D. Application to Facts

The parties have stipulated that, had a town employee performed the inspection, the town would be immune. There are no facts in the record suggesting that the Vicaris relied on the inspection in a manner giving rise to a special relationship. Thus, the question of immunity for the Board of Fire Underwriters turns not on the availability of immunity for the town, but on the Board's relationship to the town.

As noted in Part V.C., *supra*, the Board cannot in any way be considered an employee of the town. The town has not merely contracted out a governmental inspection function, but has delegated the responsibility of performing inspections. There is no basis to hold the Board of Fire Underwriters immune.

### VIII. Conclusion

Defendant Board of Fire Underwriters motion for summary judgment is granted. The claim is time barred under New York's statutes of limitations for contract claims and for injury to property resulting from negligence. If the claim were not so barred, the Board would not be entitled to claim governmental immunity.

SO ORDERED.