OPINION OF THE COURT
Robert E. Fischer, J.
Atlantic-Inland, Inc. (Atlantic), a corporation in the business of providing inspection services and certifications of compliance with the electric code of various municipalities in the State of New York, brought this action against the Town of Union (the Town) to obtain a judgment declaring invalid certain provisions of an ordinance of the Town which required inspection and certification of code compliance of electrical installations by the New York Board of Fire Underwriters (the Board). After the action was commenced, the Board was permitted to intervene, whereupon plaintiff moved for summary judgment. The motion was denied because of the lack of appropriate notice to the *510 Attorney-General of the allegations attacking the ordinance on constitutional and monopoly grounds, as well as the paucity of facts presented.
The Board now seeks renewal of the motion by order to show cause supported by further affidavits and exhibits, with the representation that the underlying papers present “all available information pertaining to this action”, including an affirmation of the Town Attorney representing that the Town “would have no other evidence to offer on trial.” Atlantic joins the application by cross motion appending various affidavits and exhibits which its counsel deems to be “all of the relevant data.” Copies of all papers have now been served upon the Attorney-General.
Upon the representation by all counsel that all relevant facts are fully presented in the underlying affidavits and exhibits, leaving only questions of law for resolution, we grant renewal of the motion for summary judgment and proceed to summarize the facts afforded by the parties.
The “Electrical Code” of the Town containing the provisions at issue was adopted by ordinance and became effective in 1964. It has remained unchanged since its enactment, and requires that electrical installations of 50 volts or more conform to the National Electrical Code, with inspection and proof of compliance to be provided as follows:
“4. electrical inspector. Each of the duly appointed Inspectors of the New York Board of Fire Underwriters are hereby authorized and deputized as agents of the Town of Union to make inspections and reinspections of all electrical installations heretofore and hereafter described, and to approve or disapprove the same. In no event, however, will the cost be a charge against the Town of Union. * * *
“6. violations of the ordinance. It shall be a violation of this ordinance for any person, firm or corporation to install or cause to be installed, or to alter electrical wiring for light, heat or power in or on properties in the Town of Union...until an application for inspection has been filed with the New York Board of Fire Underwriters. It shall be a violation of this ordinance for a person, firm or corporation to connect or cause to be connected electrical wiring, in or on properties for light, heat or power, to any source of electrical energy supply, prior to the issuance of a temporary certificate, or a certificate of compliance, by the New York Board of Fire Underwriters.” (Ordinance of Town of Union, “Electrical Code”, art XXVI.)
The affidavit of the principal officer of the plaintiff recounts its history and identifies the issues presented. It appears that *511 since its organization in 1977, Atlantic has engaged exclusively in the business of making electrical inspections throughout “upstate” areas of New York. It has operated “in direct competition” with the Board, both in those areas where the local public utility requires certificates of compliance with the national code before it will provide electrical service,[1] and in municipalities where the controlling ordinance simply requires a certificate of compliance issued by an electrical inspection agency.
The affidavits reveal that a number of upstate cities, villages and towns authorize inspection of electrical installation and certificates of code compliance by both Atlantic and the Board.[2] However, a number of other municipalities have adopted ordinances which — as in the ordinance at issue here — deputize inspectors hired by the Board as agents of the municipality, and require that a certificate of code compliance by the Board be furnished before the installation is energized.[3] In fact, the Board *512 has solicited municipalities in New York State to deputize the Board’s inspectors in this manner.[4]
Both Atlantic and the Board are members of the International Association of Electrical Inspectors, and both apply the National Electrical Code as the standard for inspection and certification. The affidavits also disclose that in other States, including the adjoining States of Pennsylvania and New Jersey, similar inspecting agencies compete in providing such electrical inspections and certifications, with timely and efficient service afforded to the public at reasonable fees. The inspection rates charged by Atlantic and the Board are competitive, and it is conceded that each have competent electrical inspectors to make the electrical inspections required and certify the results. In fact, it appears that the two major utilities furnishing electrical energy to the upstate New York area make no distinction in their inspection requirements between Atlantic and the Board, and energize electrical installation upon inspection and certification of code compliance by either.
The affidavit and exhibits presented by the Board reveal that it is a not-for-profit corporation, originally formed over a century ago by the insurance companies operating in the State to decrease fire losses and has, among its present corporate powers, authority to investigate fraudulent claims as well as provide inspection of electrical installations. It is apparent from its history that the Board was originally formed to advance the interests of the various insurers by reducing fire losses, and it asserts no special status or privilege here because of its “not-for-profit” corporate status. Until 1977, with the exception of the Cities of Syracuse and New York, it was the only electrical inspection organization available to produce such services in the State.
*513 In its criticism of the ordinance, Atlantic finds no fault with the requirement for expert inspection and certification of code compliance before electrical installations may be energized, and agrees that such is an appropriate exercise of the Town’s police power. It asserts, however, that in its present form the ordinance effectively excludes Atlantic from providing inspection services within the Town, in that those in need of such services — the property owners, electrical contractors, and electricians will not retain Atlantic to perform electrical inspection and certification services when the ordinance directly demands inspection by, and by indirection payment to, the Board for the same services. Stated in terms of legal effect, Atlantic asserts that the result of the inspection requirements of the ordinance is “restraint of trade, stifling of competition, and fostering of a monopoly in the electrical inspection business”.
The Attorney-General supports Atlantic’s thesis and urges that whether viewed as conduct establishing a monopoly, or as a refusal to deal, the provisions of the ordinance violate both the Sherman Antitrust Act (US Code, tit 15, §§ 1, 2) and State counterpart of those sections (State of New York v Mobil Oil Corp., 38 NY2d 460, 463), contained in the Donnelly Act (General Business Law, § 340, subd 1).
The Board, on the other hand, asserts that Federal antitrust doctrine is not relevant; that Atlantic lacks the standing to address the issues; and in any event, the provisions of the ordinance neither create a monopoly, nor violate those provisions of the Donnelly Act which forbid the restraint of competition “in the conduct of any business, trade or commerce or in the furnishing of any service.” The Board asserts, in any event, that since the ordinance was enacted by the Town in the exercise of its police powers, its provisions may not be deemed in violation of constitutional restrictions, nor subject to attack for restraint of trade or creation of an unlawful monopoly.
Initially we address the Board’s contention that Atlantic lacks “standing to assert any alleged rights of the citizens of the Town of Union.” We find no need to analyze the status and posture of the parties at length in this regard, in view of the more recent decisions of our appellate courts concerning similar issues (see Matter of Morgenthau v Cooke, 56 NY2d 24, 30; Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 9; Boryszewski v Brydges, 37 NY2d 361, 363-364; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 5-8; Venditti v Incorporated Vil. of Brookville, 96 AD2d 887). Simply stated, it is apparent on the facts presented here, that the interests of Atlantic lie well *514 within the “zone of interest” test applied in those decisions, entitling it to raise not only those aspects of the ordinance affecting its right to do business, but the concomitant rights of the citizens of the Town affected (see, e.g., Matter of Douglaston Civic Assn. v Galvin, supra).
Nor do we find any need to address the question of whether the requirement for inspection of electrical energy installations is within the police power of the defendant municipality. Rather inquiry must be directed to whether the projection of that concept by the mechanism utilized in the ordinance is a proper exercise of that power.
As a preface to analysis of the ordinance provisions we observe that although its requirements must have some ““ ‘fair, just and reasonable connection’ ” between it and the promotion of the health, comfort, safety and welfare of society’ ” (Montgomery v Daniels, 38 NY2d 41, 54), upon its enactment it stands supported by a stlong presumption of constitutionality and reasonableness, requiring the plaintiff to establish lack of any “reasonable basis” for the provisions challenged if it is to succeed here. It is also clear that the rationale supporting the need and reasonable basis underlying such enactment may not remain forever viable, for “even though a police power enactment may have been or may have seemed to be valid when made, later events or later-discovered facts may show it to be arbitrary and confiscatory” (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541). Such exercise of the Town’s police powers must also be reasonable when weighed against the broad constitutional protections of due process and equal protection generally (20 NY Jur 2d, Constitutional Law, §§ 209-210), while similar tests of reasonableness are applied in assessing the validity of competitive restraints under the Donnelly Act (e.g., Atkin v Union Processing Corp., 90 AD2d 332, 336, affd 59 NY2d 919).
Thus, we need not test the ordinance by application of discrete provisions of the Constitution or antimonopoly statutes, for in the fact setting which we address, the test for each is essentially the same: Is there a reasonable basis for the exclusive assignment and fee arrangement used by the ordinance to address the danger of energized electrical wiring; and if so, have the conditions requiring such arrangement changed since its enactment, thereby rendering its provisions unreasonable.
Analysis of the ordinance to determine its effect at the time of its enactment reveals that it did not merely designate the Board to inspect electrical installations, but in fact clothed two separate but related entities with the Town’s authority. “Inspectors” *515 of the Board — not otherwise described as to qualifications when so designated by the Board — were deputized as agents of the Town (§ 4), while the Board itself was designated to receive applications for inspection and issue qualifying certificates of compliance (§ 6). Thus the ordinance not only surrendered the authority to designate the “agents” who are deputized to act on behalf of the Town, but surrendered to the Board the discretion “to approve or disapprove” installations.[5]
Further analysis discloses that the ordinance is silent as to fees, leaving to the Board the discretion as to the charges it will collect for the services the ordinance demands. In fact, further reference to the by-laws of the Board exhibits that the amount of fees to be paid by the citizens of the Town for such inspection is ultimately left to the discretion of the Board’s Committee on Electricity, subject only to the approval by its Board of Directors. The Board, then, by grant of the Town not only exercises the Town’s “police power” in fact, but fixes, collects and retains the fees that must — by design of the ordinance — be paid to the Board for the exercise of that power.
The principle has long been established that a municipality has no more power than the State to delegate to others the right to exercise its police power (20 NY Jur 2d, Constitutional Law, § 200). As put in a leading text, “when authority to exercise the police power within a defined sphere is delegated by the state to a municipal or other public corporation, the authority is inalienable in the corporation, and it cannot in any manner be contracted away or otherwise granted, delegated, diminished, divided, or limited by the corporation” (6 McQuillin, Municipal Corporations [3d ed rev], § 24.41).
The limits of the Town’s authority to establish and collect fees for such services are revealed in the authorizing statutes. Thus while subdivision 3 of section 130 of the Town Law provides that an electrical code may be enacted by the Town providing for “inspection of all electrical work”, the introductory paragraph of section 130, authorizing such enactment, provides in part: “In order to accomplish the regulation and control of such purposes, the town board may include in any such ordinance, rule or regulation provision for the issuance and revocation of a permit or permits, for the appointment of any town officers or employees to enforce such ordinance, rule or regulation and/or the terms and conditions of any permit issued thereunder, and for the collection of any reasonable uniform fee in connection therewith.” (Emphasis supplied.)
*516 In turn, although the receiver of taxes and assessments is designated generally to receive “all fees * * * prescribed by law” (Town Law, § 37), the Town Board may opt to have such “reasonable uniform fee” paid to the Town Building Inspector or the Deputy Building Inspector (Town Law, § 138). In either event, it is clear that such fees may not be retained by those “deputized” to perform the inspection on behalf of the Town Board: “No town officer or employee shall retain any fees or moneys received by him in connection with his office but such fees or moneys shall be the property of the town and be paid to the supervisor not later than the fifteenth day of each month following the receipt thereof, excepting such fees and moneys the application and payment of which are otherwise provided for by law.” (Town Law, § 27, subd 1.)
Thus, testing the ordinance against the restrictions and conditions contained in the authorizing statutes, its invalidity is apparent. Although it purports to adopt the inspectors of the Board as deputies of the Town, the ordinance provides that their services will be provided without any “charge against the Town of Union” (par 5). By such indirection, the fees to be charged — and obviously contemplated by such language — are paid to and retained by the Town’s “deputies” in direct contravention of the admonition contained in the Town Law. (See 1979 Opns State Comptroller, No. 79-546; cf. People ex rel. VanDenbergh v Town Bd., 254 App Div 54.)
In view of the foregoing, it is apparent that the ordinance is both constitutionally infirm and ultra vires: in purporting to designate and delegate to unnamed agents of a private entity the exercise of the police powers of the Town and the right to establish and collect fees for the exercise of such power; and in failing to fix standards of reasonableness, or any standards, for the fees to be paid.
Even were we to consider the designation of the Board and its agents appropriate as of the time the ordinance was enacted in 1963, upon the establishment and availability of a competitive and equally qualified inspection agency in 1977, the exclusive designation of the Board became “arbitrary and confiscatory” (Defiance Milk Prods. Co. v Du Mond, supra; Matter of Spielvogel v Ford, 1 NY2d 558, 563) as to Atlantic. On the submission here, it was conceded that the inspectors of both corporations are qualified to make such inspections; that they apply the same testing standards and produce inspection results acceptable throughout the industry. It is also apparent from the facts presented in the underlying affidavits that competition between *517 such inspecting agencies provides a workable solution to the problem sought to be resolved by the ordinance, and results in reasonable fees and charges. Under such circumstances we observe no reasonable or rational basis why Atlantic’s services are not as acceptable as those of the Board.
While the Town contends that “it is desirable and important to have a single inspection agency for proper administration of the Code” and though the designation of a single entity might provide ease of administration, administrative ease provides no basis for a grant of exclusivity in the exercise of police power, lacking as it does any reasonable relation to the potential danger posed.
The Town also expresses concern that others, unqualified to perform such inspection services, may offer certifications of code compliance on which the Town could not rely. Although such has yet to occur, it is apparent that the Town has the authority and means to prescribe conditions which will assure that adequate inspections and responsible certifications are had. (See, e.g., Matter of Electrical Inspection Auths., 127 NJ Super 295.)
We conclude from the foregoing: that plaintiff is entitled to summary judgment, having established beyond a reasonable doubt that the ordinance is constitutionally infirm as measured by due process and equal protection standards; that the provisions noted are arbitrary in the absence of any reasonable basis for exclusive designation of agents of the Board as electrical inspectors, or of the Board as the exclusive issuer of certificates of compliance, and that such provisions are confiscatory of plaintiff’s business rights. We further conclude that the ordinance is in violation of the Town Law, in requiring the citizens of the Town to pay a fee to the Board in exchange for such certificates of compliance when such fee is fixed, and retained, by the Board and no uniform reasonable fee is established by the ordinance. Finally, we conclude that the ordinance is anticompetitive and an unwarranted monopoly in violation of the Donnelly Act in that it is an improper arrangement between the Town of Union and the New York Board of Fire Underwriters which excludes Atlantic-Inland, Inc., and others from doing business in the Town and precludes the citizens of the Town from a choice of qualified electrical inspection agencies.
Counsel for plaintiff to submit judgment, on notice, to reflect the foregoing. If the parties cannot agree as to the form of the judgment, plaintiff may seek settlement thereof, on notice, in chambers. The judgment will also set forth provisions enjoining the Town from enforcing its ordinance but affording the Town a *518 fixed period of time prior to being so restrained within which to consider other legislation if it be so advised.
No motion costs are awarded, but plaintiff may attach its statutory bill of costs and disbursements to the judgment and include those sums in that judgment.

. These are Niagara Mohawk Power Corp. and New York Electric and Gas Corp. — the major upstate electrical utility companies.

. Plaintiff advises that the codes of the following were amended to permit inspections by Atlantic as well as the Board:
CITIES VILLAGES TOWNS
Batavia Saranac Lake Fabius
Watertown Sackets Harbor Big Flats
Cortland Cape Vincent LeRoy
Malone Ilion Little Falls
Geneva Herkimer
Corning Dryden Gloversville Bath
Glens Falls Groton
Lockport Greene
Utica
Oneonta
Frankfort
Fulton
Troy

. Plaintiff advises, however, that although request was made the codes following were not amended and only the Board may inspect therein:
CITIES VILLAGES TOWNS
Saratoga Springs Vernon Schodak
Johnstown Hamilton Horseheads
Little Falls Watkins Glen Elmira
Elmira Horseheads Clay
Plattsburgh Elmira Heights Salina
Schenectady Wellsville Sullivan
Brockport Owego
Rochester Silver Springs
Queensbury Castile
Oswego Parma
*512 Ogdensburg Attica
Ithaca Tully
Oneida Manlius
North Syracuse
Newark
Fayetteville
Potsdam
Canton
Skaneateles

. That the Board authored these ordinances is clear. As noted in the 1967 history of the Board: “The [Electrical] Department [of the Board] also assists in education and development work for electrical safety. Assistance is given in drafting and revising electrical ordinances for communities to govern and control the licensing of electrical contractors and the inspection of electrical installations”.

. We also note that connecting wiring to an electrical energy supply without seeking the Board’s approval will invoke criminal sanctions (§ 7).