**ELECTRICAL INSPECTORS, INC., Plaintiff,**

v.

**THE NEW YORK BOARD OF FIRE UNDERWRITERS, et al., Defendants.**

**No. CV 99–1138.**

United States District Court, E.D. New York.

March 30, 2001.

Brand, Brand, & Burke, By Ronald C. Burke, Esq., New York, for Plaintiff.

Law Offices of Donald T. Rave, By Donald T. Rave, Esq., Locust Valley, for Defendants The New York Board of Fire Underwriters and Alexander Pirnie.

Schapiro & Reich, Esqs., by Steven M. Schapiro, Esq., Lindenhurst, for Defendant Village of Oyster Bay Cove.

Reilly, Like, Tenety & Ambrosino, Esqs., by Frank N. Ambrosino, Esq., Babylon, for Defendant Village of Islandia.

Eliot Spitzer, Attorney General of the State of New York, by Stephen D. Houck, Chief, Antitrust Bureau, and Gary P. Weinstein, Assistant Attorney General, New York, Amicus Curiae.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Electrical Inspectors, Inc. ("EII") brings this action against defendants Alexander Pirnie ("Pirnie") and the New York Board of Fire Underwriters (collectively, the "Board"), and the Village of Oyster Bay Cove ("Oyster Bay Cove") and the Village of Islandia ("Islandia") (collectively, the "municipal defendants")[1] asserting, in its amended complaint, claims for violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 (the "federal antitrust claims"), and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340(1) (the "Donnelly Act claims"), as well as federal claims for violation of due process and equal protection and various supplemental state law claims. In response to the amended complaint, defendants assert, *inter alia*, that they are shielded from liability under federal antitrust laws by the

---

1. EII also named the Village of East Hills ("East Hills") as a defendant, but the action has since been discontinued as against East Hills.

"state action immunity" doctrine. Before the Court are EII's motion pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike defendants' state action immunity defenses, and Islandia's and the Board's cross-motions pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing various claims, including the federal antitrust claims. For the reasons below, EII's motion is denied and defendant Board's and Islandia's motions are granted.

## I. *BACKGROUND*

In 1981, the New York State legislature confronted the persistent problem and danger to person and property from fire resulting from the lack of a "single, adequate, enforceable code establishing minimum standards for fire protection" in the construction and maintenance of buildings in the state by enacting the Uniform Fire Prevention and Building Code Act, N.Y. Exec. Law § 370 *et. seq.* (McKinney 1993) (the "Act"). The Act declared, *inter alia,* that "it shall be the public policy of the state of New York" to: "[i]mmediately provide for a minimum level of protection from the hazards of fire in every part of the state"; "[p]rovide for the promulgation of a uniform code addressing building construction and fire prevention"; "[i]nsure that the uniform code be in full force and effect in every area of the state"; "[e]ncourage local governments to exercise their full powers to administer and enforce the uniform code"; and "[p]rovide for a uniform, statewide approach to the training and qualification of personnel engaged in the administration and enforcement of the uniform code." *Id.* § 371(2)(a)-(e). The Act prescribed standards for the drafting, by an appointed council, of a "Uniform Fire Prevention and Building Code" (the "Code"). *Id.* §§ 374–78. The Act also directed the Secretary of State to "promulgate rules and regulations pre-scribing minimum standards for administration and enforcement of the [Code]." *Id.* § 381.

Electrical code compliance inspections are used to ensure that electrical work has been done properly, to minimize the risks associated with malfunctioning, particularly fire. The Act did not specify those persons who would conduct inspections contemplated by the Code. Pursuant to the Act, the Secretary of State promulgated rules and regulations relating to, *inter alia,* the frequency and adequacy of inspections. For instance, one such regulation, 19 N.Y.C.R.R. § 429.2(b), makes an inspection of electrical wiring a condition precedent to the issuance of a certificate of occupancy. Section 429.2(b) provides that the local legislative body of a city, town, or village may by resolution provide that such inspections be performed by the following: "a designated officer or employee of the city, town or village"; "a designated officer or employee of another city, town, or village who is qualified to conduct such inspections"; "a person who is qualified to conduct such inspections and who performs such inspections pursuant to a contract with the city, town or village"; "an employee or agent of the county who is qualified to conduct such inspections"; or "a competent inspector, designated or approved by the city, town or village, whose fee shall be paid by the person ... to which the building permit was issued." *Id.* § 429.2(b)(2)(I)-(v). The regulations further provide that when a municipality "relies upon the contracted for services of an individual, partnership, business corporation or similar firm" for the performance of such inspections, it must satisfy itself as to the qualifications of that firm. *Id.* § 444.4(a).

According to the parties, municipalities generally require that all electrical wiring

be installed in conformity with the "National Electric Code."

EII is a corporation in the business of providing electrical inspections and certificates of compliance with the "National Electric Code" to electricians and residential and commercial property owners. EII provides these electrical services in New York State.

The Board similarly provides electrical inspections and certificates of compliance in New York State. The Board is a not-for-profit corporation created by an act of the New York State legislature in 1867; the legislature then reconstituted and continued the Board "as a body, corporate and politic, in perpetuity" on April 1, 1930. The Board membership consists of 96 fire insurance companies authorized to write fire insurance policies within the state. Nearly 50% of the Board's revenues are derived from membership dues and assessments paid by the 96 member companies. Pirnie is president of the Board.

Islandia and Oyster Bay Cove are municipalities located in New York, in Nassau County and Suffolk County, respectively. By resolution adopted August 4, 1988, Islandia appointed the Board as its exclusive agent with the right to issue certificates of compliance for electrical work done within its village. EII alleges that Oyster Bay Cove "has and continues to mandate by law or policy that all consumers/residents . . . retain the services of the [Board]" as exclusive agent with the right to issue certificates of compliance for electrical work done within its village. Amended Complaint ¶ 23. Thus, while EII may be free to perform electrical inspections in

Islandia, Islandia will only issue certificates of occupancy in reliance on the Board's inspections and certificates of compliance. A similar situation allegedly exists in Oyster Bay Cove.[2]

The Board maintains that it charges a uniform rate for its services throughout the state, regardless of whether its services are for a municipality that recognizes the Board as its exclusive agent or for a municipality which authorizes other entities to conduct inspections. According to the Board, it sets its fees annually and disseminates publicly throughout the state its annual schedule of fees. The Board maintains that its fees average $50 to $56, which it characterizes as "nominal." Affidavit of Alexander Pirnie, ¶ 17 & n. 1.

EII does not dispute that the Board charges a uniform rate and that the fee schedule is disseminated throughout Nassau and Suffolk Counties, although it disagrees with the Board's characterization of those rates as "nominal." As to the rates, EII asserts that while the Board charges $56 for inspecting a basic service, its minimum charge is $50 and, depending on the circumstances, the "charge on average will range up to $200." Affidavit of Richard Jendzo ¶ 5.

EII further maintains that neither the state nor these municipal defendants supervise the services rendered by the Board or regulate the fees the Board charges to homeowners and electricians. Islandia, however, maintains that it does exercise supervision over inspector, although it does not purport to regulate the Board's fees. In this respect, Frank Falco, Islandia's mayor, asserts that the village's

---

**2.** In its amended answer to the complaint, Oyster Bay Cove denies that it has any such "law or policy" extending an exclusive franchise to the Board. Oyster Bay Cove's Amended Answer ¶ 1. However, in its papers in opposition to EII's motion, Oyster Bay Cove concedes that "a policy or practice developed" in Oyster Bay Cove "to accept only the certification of the Board as to the proper and legal wiring of all facilities within the . . . Village." Defendant Oyster Bay Cove's Memorandum of Law in Opposition, at 3.

building department "maintained strict controls over the inspections and the inspectors," "established policies as to the manner in which the electrical inspections were carried out," "enforced the requirement that all inspectors assigned by the [Board] possess the appropriate qualifications," and "provided guidance to the inspectors as to how to proceed when confronted with a unique problem presented by a particular installation." Affidavit of Frank B. Falco ¶¶ 11, 17. Mayor Falco further asserts that EII first contacted the village in 1995 seeking to provide inspection services in Islandia. At that time, the village considered and denied EII's request, determining that it would not be in the best interests of the village (and its residents) or building owners to have more than one qualified agency performing services because additional inspectors "would result in loss of control . . . over the electrical inspection process and the quality of the end result." *Id.* ¶ 15. According to Mayor Falco, if the village were dissatisfied with the Board, it could replace the Board with another qualified agent, such as EII. *Id.* ¶ 16. In addition, the Board asserts that under the applicable law and regulations, the municipal defendants, not the Board, possess the actual enforcement authority and power to issue or refuse to issue certificates of occupancy, and the duties of these municipalities necessarily include review of the Board's inspection reports prior to approval or denial of a certificate.

EII claims that Islandia's exclusive arrangement with the Board and Oyster Bay Cove's alleged exclusive arrangement with the Board violate, *inter alia,* federal antitrust laws. EII asserts that these municipalities must also recognize EII as a qualified inspector. Defendants have asserted, as affirmative defenses, that state action immunity shields them from liability under federal antitrust laws. EII moves to strike those defenses, and Islandia and the Board cross-move for summary·judgment dismissing the federal antitrust claims based on state action immunity and dismissing the Donnelly Act claim and other claims. Oyster Bay Cove opposes EII's motion to strike its state action immunity defense and argues that under the circumstances alleged the defense is sufficient as a matter of law.

## II. *DISCUSSION*

On a motion under Rule 12(f), the court may strike from a pleading any "insufficient" defense. Fed.R.Civ.P. 12(f). A motion to strike an affirmative defense is decided on the basis of the pleadings alone. *National Union Fire Ins. Co. v. Alexander,* 728 F.Supp. 192, 203 (S.D.N.Y. 1989). Affirmative defenses are subject to the general rules of pleading; consequently, a party "shall state in short and plain terms the party's defenses." Fed.R.Civ.P. 8(b); *D.S. Am. (East), Inc. v. Chromagrafx Imaging Sys., Inc.,* 873 F.Supp. 786, 797 (E.D.N.Y.1995). "An affirmative defense is legally 'insufficient' if, as a matter of law, it cannot succeed under any circumstances." *D.S. Am. (East), Inc.,* 873 F.Supp. at 798.

A party seeking summary judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834

F.2d 54, 57 (2d Cir.1987). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Guided by these principles, this Court addresses the sufficiency of the state action immunity defenses, assuming for purposes of discussion the sufficiency of the federal antitrust claims.

### A. *The Municipal Defendants*

██ Each of the municipal defendants, Oyster Bay Cove and Islandia, argues, *inter alia*, that the act or alleged act of appointing the Board as exclusive agent with the right to issue certificates of compliance for electrical work done within its village is immune from federal antitrust laws under the "state action immunity" doctrine, which originated in *Parker v. Brown*, 317 U.S. 341, 351–52, 63 S.Ct. 307, 87 L.Ed. 315 (1943). When a state acts in its sovereign capacity, its actions are immune from federal antitrust laws. *Id.* As state subdivisions, however, municipalities do not enjoy the same deference due a state as sovereign. Rather, a municipality will be immune from federal antitrust laws only if it acts "as an instrumentality of the state, through which the state has clearly and affirmatively chosen to implement its policies." *Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.*, 790 F.2d 1032, 1042 (2d Cir.1986) (citing *Community Comms. Co. v. City of Boulder*, 455 U.S. 40, 52–54, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 411–13, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978)). Thus, when a municipality asserts state action immunity, it must identify a "clearly expressed state policy" that authorizes its anticom-

petitive actions. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). "The legislation must contain an affirmative showing of intent, though it need do no more than authorize the challenged conduct." *Cine*, 790 F.2d at 1042. As the Second Circuit has recognized, "the 'clear articulation' label is not quite the hurdle that its language suggests, because it has always been synonymous with the foreseeability test." *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 69 (2d Cir.1998). In other words, if the "resulting anticompetitive activities are a foreseeable consequence of the state delegation, the 'clear articulation' standard has been met." *Cine*, 790 F.2d at 1042. "To meet this requirement the party claiming the state action defense must show that the 'legislature contemplated the action complained of.'" *Id.* (quoting *Hallie*, 471 U.S. at 44, 105 S.Ct. 1713, in turn quoting *Lafayette*, 435 U.S. at 415, 98 S.Ct. 1123). The Second Circuit in *Cine* summarized "the rule defining the scope of the delegation" as follows:

> [W]e conclude that the enabling legislation need not explicitly authorize the exact actions undertaken. It is only necessary that the permitted actions produce anticompetitive consequences that foreseeably flow from the grant of state authority. That is, the enabling statute must affirmatively designate a particular area to be regulated, provide the methods of regulation, and create grounds for a reasoned belief that some anticompetitive activity could be envisioned.

*Id.* at 1043–44.

██ A review of the Act supports the municipal defendants' argument that the appointment of an exclusive agent is a "foreseeable" consequence of the state delegation of authority to administer and en-

force a uniform code. In this respect, the Act declares that it is "the public policy of the state of New York" to, *inter alia*, "[e]ncourage local governments to *exercise their full powers* to administer and enforce the uniform code." N.Y. Exec. Law § 371(2)(d) (McKinney 1993) (emphasis added). The Act mandates the uniform and active enforcement, by municipalities, of the contemplated uniform code. The Act designates a discrete area to be regulated, *i.e.*, fire prevention and building construction, an area integral to public health and safety. The Act contemplates the inspection of electrical work to be performed within the limited geographic area of each municipality, and provides a method of regulation, namely, by municipalities exercising their "full powers" to administer and enforce a governing uniform code. Electrical inspections are an integral aspect of municipal building inspections, the regulation of which clearly falls within a municipality's police power. Given this broad delegation of authority over a matter integral to public health and safety, it is foreseeable that a municipality would, though it need not, displace competition in administering and enforcing its own electrical inspection program within its limited geographic area by appointing an exclusive agent. Indeed, the regulations promulgated pursuant to the Act recognize that a municipality may conduct such inspections through its own employees or through a designated agent. Thus, contrary to EII's arguments, it is foreseeable that a municipality would, though it need not, designate an exclusive agent, with or without competitive bidding.

 EII argues that because the Board is a private party the municipal defendants are not entitled to state action immunity unless they show "active state supervision." Memorandum of Law in Support of Plaintiff's Motion to Dismiss Certain Affirmative Defenses of All Defendants, at 4–5. To the extent EII suggests that the municipal defendants must show that the state actively supervised their anticompetitive conduct, there is no such requirement. As the Second Circuit held in *Cine:* "When the actor is a municipality, the active state supervision requirement is abandoned because a municipality has no incentive to act in other than the public interest." *Cine,* 790 F.2d at 1047. To the extent EII argues that the municipal defendants are not entitled to state action immunity unless they can plead and prove that they maintained "active governmental supervision of the prices or the services rendered by [the Board]," Memorandum of Law in Reply on the Motion and in Opposition to the Defendants' Cross–Motion for Summary Judgment ("Plaintiff's Reply Mem."), at 6, that argument is unavailing under the circumstances alleged by EII. The effective municipal decisions that EII alleges caused injury to *EII* are the municipal defendants' appointments of the Board as exclusive agent, not the alleged unsupervised Board conduct or alleged unsupervised Board fee-setting. The municipal defendants' decisions to appoint the Board as exclusive agent are immune from attack by EII under the federal antitrust laws by the state action immunity doctrine.

Accordingly, Oyster Bay Cove and Islandia are entitled to state action immunity from EII's federal antitrust claims.

B. *The Private Party Defendants*

 As for the Board's assertion of state action immunity, EII initially argues that the Board is barred by collateral estoppel from asserting that defense to EII's federal antitrust claims based on the decision in *Atlantic–Inland, Inc. v. Town of Union,* 126 Misc.2d 509, 483 N.Y.S.2d 612 (Sup.Ct., Broome County 1984). This Court disagrees. In *Atlantic–Inland,* the

court struck down a Town of Union ordinance appointing the Board as exclusive agent to conduct electrical inspections and issue certificates of compliance as violating the state constitution and the Donnelly Act. *Id.*, 483 N.Y.S.2d at 618–19. Although the Board was an intervenor in that action, that action did not involve the same factual or legal issues raised here. Indeed, the court did not address the issue of state action immunity to a federal antitrust claim, and the municipal defendants here were not parties to that action nor were their appointments of the Board as exclusive agent at issue there. Accordingly, collateral estoppel is not a bar to the Board's assertion of state action immunity based on the alleged appointments by Oyster Bay Cove and Islandia.

■ EII further argues that the Board is not entitled to state action immunity because the Board cannot show "active governmental supervision of the prices or the services rendered by [the Board]." Plaintiff's Reply Mem. at 6. However, a showing of active "governmental" supervision is not required as to the challenged municipal decisions. The effective decision that EII claims caused it injury are the municipal defendants' decisions appointing the Board as exclusive agent. Because the municipal defendants' decisions appointing the Board as exclusive agent are immune from antitrust liability, the Board is similarly immune from antitrust liability as the party receiving those appointments. *See Cine*, 790 F.2d at 1048; *Zimomra v. Alamo Rent–A–Car, Inc.*, 111 F.3d 1495, 1500 (10th Cir.1997); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*,

810 F.2d 869, 878 (9th Cir.1987); *Bloom v. Hennepin County*, 783 F.Supp. 418, 426–27 (D.Minn.1992); *City Comms., Inc. v. City of Detroit*, 660 F.Supp. 932, 933–35 (E.D.Mich.1987). To allow such a tangential attack on the decision to appoint the Board would effectively block a municipal defendant's efforts to comply with the articulated state policy. *See Cine*, 790 F.2d at 1048.

Accordingly, the Board is entitled to state action immunity from EII's federal antitrust claims.[3]

### III. CONCLUSION

Because defendants are entitled to state action immunity, EII's motion to strike is denied and the Board's and Islandia's motions for summary judgment on the federal antitrust claims are granted. However, before addressing any of EII's supplemental state claims, the parties are directed to address the viability of the remaining federal claims (i.e., due process and equal protection claims). The Court will schedule a conference to address any further briefing.

SO ORDERED.

---

**3.** Pirnie and the Board also argue that they are entitled to immunity from EII's federal antitrust claims under the "Noerr–Pennington doctrine" established by the Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United*

*Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Based on this Court's determination that the Board is protected by state action immunity, it need not address the applicability of the Noerr–Pennington doctrine.